1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10   ROXANA TOWRY RUSSELL, d/b/a        Case No. 5:19-cv-01074-FMO-SHK
     ROXY RUSSELL DESIGN, an
11   individual                          **ORDER GRANTING IN PART AND
                                         DENYING IN PART PLAINTIFF'S**
12                                       **MOTION FOR DEFAULT**
                      Plaintiff,         **JUDGMENT [117]**
13
14                    v.

15
     INVECH INC., a California
16   Corporation, INVECH INC., a
     Colorado Corporation; INVECH INC.,
17   a Company operating a virtual
     storefront; CHUN YAN ZHANG, an
18   individual; RUYIN HE, an individual;
     ONE NAIL AND LASH BAR, a
19   California Business; INVECH, a
20   company operating a virtual storefront
     on Amazon.com and elsewhere; XING
21   HU, an individual; YUYING LIU
22   (a/k/a Ying Liu), an individual,

23
                      Defendants.
24
25

26

27   **I. INTRODUCTION**

28        Before the Court is a Motion for Default Judgment brought by Plaintiff Roxana

Towry Russell d/b/a Roxy Russell Design against the following defendants (the "Defaulting Defendants"):

- Invech, Inc., a Colorado Corporation ("Invech CO")
- Invech, Inc., a company operating a virtual storefront ("Invech VS")
- Invech Inc., a company operating a virtual storefront on Amazon.com and elsewhere ("Invech Amazon") (collectively "Invech Entities")
- Xing Hu, an individual
- Yuying Liu, an individual

(*See* Mot., ECF No. 117.)

For the following reasons, the Motion is **GRANTED in part** and **DENIED in part**.

## II. BACKGROUND

Plaintiff "is a renowned sculptural artist" based in California who "designs, manufactures and sells" pendant lamps through her company Roxy Russell Design, including her Medusa, Polyp, Ophelia, and Hydra lamps which have "garnered attention and acclaim all over the world." (Second Amended Complaint ("SAC") ¶¶ 1, 47, ECF No. 100.) Plaintiff owns registered copyrights in her lamps as sculptural works and images of her lamps as pictorial works. (*Id.* ¶¶ 56-63.) The SAC alleges infringement of seven copyrights: (1) Medusa Sculptural Work; (2) Hydra Sculptural Work; (3) Ophelia Sculptural Work; (4) Medusa Pictorial Work; (5) Hydra Pictorial Work; (6) Ophelia Pictorial Work; and (7) Polyp Pictorial Work. (SAC ¶¶ 84-217.) Plaintiff has sold the first three sculptural works from 2011 to present, and currently sells them separately at retail prices of $475, $470, and $375, respectively. (Decl. of Sidney Blum[1] ("Blum Decl.") ¶ 17, ECF No. 117-2.)

The following depicts Plaintiff's works as shown on her online storefront:

---

[1] Mr. Blum is an expert witness opining on whether the copyrighted works have "independent economic value." (Blum Decl. ¶ 1.)



(*Id.* ¶ 17.)

The Invech Entities operate on online marketplaces such as Walmart.com, eBay, and Alibaba. (SAC ¶¶ 75, 79.) At all relevant times, Hu and Liu were corporate officers for Invech VS and Invech CO who directed the Invech Entities to infringe Plaintiff's copyrights. (*Id.* ¶¶ 33-34, 101, 119, 137, 155, 176, 196, 217.) In 2016, the Invech Entities began manufacturing and selling Plaintiff's lamps using copyrighted images online. (*Id.* ¶¶ 68-70, 76.) "According to Walmart's website," the Invech Entities sell over 1,000 products on walmart.com. (*Id.* ¶ 67.) The Invech Entities utilized aliases to sell infringing jellyfish lamps on online marketplaces at discounted prices and displayed copies of Plaintiff's copyrighted images, contributing to "thousands of infringing products" sold in the United States. (*Id.* ¶¶ 75-79.) The Invech Entities continued to use these aliases to sell infringing products after Plaintiff filed this action. (*See* Glow

1  Ethereal Jellyfish Lampshade on eBay, ECF No. 49-1 1.) The following depicts two

2  examples of the Defaulting Defendants' use of Plaintiff's copyrights:



(Blum Decl. ¶ 22.)

1   Plaintiff brought this action on June 11, 2019 against defendants Invech CA,
2   Chun Yan Zhang, Ruyin He, and One Nail and Lash Bar. (Compl., ECF No. 1.)
3   Plaintiff's counsel later received typo-riddled emails from "Anita Casler" who
4   purported to be affiliated with Invech Co. and sought to settle this matter but would not
5   reveal her full name, address, or participate in a phone call. (*See* Email Correspondence,
6   ECF No. 18-5.) Plaintiff therefore amended the complaint to name Invech CO and
7   Invech VS and served them with the summons and First Amended Complaint ("FAC")
8   on August 19, 2020. (*See* FAC, ECF No. 13, *see also* Proof of Service, ECF No. 18.)

9   Plaintiff also found a storefront called "Invech Amazon" through third-party
10  discovery which sells many of the same products as Invech VS. (SAC ¶¶ 292-23.)
11  Plaintiff therefore filed the SAC on July 1, 2020, adding Liu, Hu, and Invech Amazon
12  as defendants. (*See generally id.*) These three defendants were served but never
13  responded, resulting in the Clerk entering default on August 17, 2020. (Proof of Service,
14  ECF No. 110; Default by Clerk, ECF No. 113.) On September 16, 2020, the Court
15  granted the parties' stipulation to dismiss Invech CA, One Nail and Lash Bar, Ms.
16  Zhang, and Ms. He. (Order Granting Stipulation, ECF No. 121.)

17  The Invech Entities and Hu have gone to great lengths to hide their identities and
18  avoid service. Ray Lou, a Beijing-based attorney who claimed to represent Invech CO
19  and Invech VS would not identify who hired him until subpoena responses from his law
20  firm identified Hu. (Decl. of Steve Papazian ("Papazian Decl. I") ¶ 9, ECF No. 49-2.)
21  Lou later told Plaintiff's counsel that "Anita Castler is probably a fictitious name used
22  by his clients." (*Id.* ¶ 12.) Hu also falsified corporate documents in Colorado, as Invech
23  CO disclosed Hu as its registered agent at a Denver address, but neither Invech CO nor
24  Hu can be found at their disclosed addresses. (CO Sec. of State Report, ECF No. 18-1.)
25  Invech CO's "principal office" is also a sham, as another business has occupied its listed
26  address for years and individuals interviewed from that business have never heard of
27  Invech. (Aff. of Due Diligence, ECF No. 18-3.)
28  / / /

The Invech Entities further complicated Plaintiff's efforts through impersonating other companies by, for example, falsely representing that they operated other top selling companies on Amazon that deny ever working with the Invech Entities. (Mot. 8.) Furthermore, Hu has instructed his attorneys not to appear in this action. (Papazian Decl. I ¶ 10; *see also* Retention Agreement excluding "defense in court"; ECF No. 72-4.) Hu's purported attorney even informed Plaintiff's counsel that he would transfer assets to a different entity to avoid liability should Plaintiff seek a default judgment. (Papazian Decl. I ¶ 9.) Hu and the Invech Entities' deceptive tactics required Plaintiff to serve more than 15 subpoenas, engage in motion practice to obtain discoverable evidence, and waste innumerable hours to identify and document information concerning each of the liable entities. (Decl. of Steve Papazian ("Papazian Decl. II") ¶¶ 35-36, ECF No. 117-4.)

## III.    LEGAL STANDARD

### A. Default Judgment

Rule 55(b)(2) permits the Court to enter default judgment. The Court need not make detailed findings of fact in the event of default. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990). On entry of default, well-pleaded allegations in the complaint regarding liability generally are deemed to be admitted. *DirecTV, Inc. v. Huynh*, 503 F.3d 847, 851 (9th Cir. 2007). Allegations as to damages, however, must be proven. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987).

The Court considers several factors "in exercising discretion as to the entry of a default judgment includ[ing]: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

/ / /

6

Local Rule 55-1 requires the party seeking default judgment to submit a declaration establishing (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator, or other representative; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice. C.D. Cal. L.R. 55-1.

**B. Personal Jurisdiction**

A federal court may exercise general personal jurisdiction over defendants domiciled within the forum state. *Miliken v. Meyer*, 311 U.S. 457, 462–463 (1940). A corporation is domiciled in the state of its incorporation and its principal place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).

The Ninth Circuit employs a three-prong test for specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (internal quotation marks and citation omitted).

A purposeful direction analysis is most often used in suits sounding in tort, such as this copyright infringement action. *Id.* To determine whether jurisdiction is proper under the "purposeful direction" prong, the Ninth Circuit employs the "effects test" which requires proof of three elements: "the defendant allegedly [must] have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La*

*Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (citing *Schwarzenegger*, 374 F.3d at 803).

## IV.    DISCUSSION

### A. Personal Jurisdiction and Service of Process

The Court first must address whether it may exercise personal jurisdiction over each of the Defaulting Defendants and whether they were properly served. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

The Court may exercise general personal jurisdiction over Hu and Liu because they reside in California. (SAC ¶¶ 7, 33, 34.) Both were served under Rule 4(e)(1) and Cal. Code of Civ. P. 415.20(b),[2] as Plaintiff served each defendant by first class mail and by leaving the complaint and summons at each defendant's usual place of abode after attempts at personal service. (Proofs of Service, ECF Nos. 110-1, 110-3.)

The Court may exercise specific personal jurisdiction over the Invech Entities under the "effects test" because they copied, displayed, and sold a California-based company's copyrighted works, often shipping them from California to California customers. (*See, e.g.,* Walmart Data, ECF No. 58; SAC ¶ 41.) Accepting the SAC's allegations, the Invech Entities intentionally infringed Plaintiff's copyrights in California and knew that Plaintiff would suffer harm in California as a consequence. *Schwarzenegger*, 374 F.3d at 803. Moreover, Plaintiff served Invech CO and Invech VS under Rule 4(e)(1) and governing Colorado law by mailing the complaint and summons via first class mail, return receipt requested, to the registered principal addresses of both entities. (Proof of Service, ECF No 18; Colo. Rev. Stat. § 7–9–704(2)) ("If an entity that is required to maintain a registered agent pursuant to this part 7 has no registered agent, or if the registered agent is not located under its registered agent

---

[2] Unless federal law provides otherwise, service on both an individual and a corporation within the United States is proper in any manner following state law in the state where the district court is located or where service is made. Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A).

1    name at its registered agent address, or if the registered agent cannot with reasonable

2    diligence be served, the entity may be served by registered mail or by certified mail,

3    return receipt requested, addressed to the entity at its principal address.")

4        Lastly, Plaintiff argues that Hu and the Invech Entities are alter egos and that

5    service on Hu is therefore equivalent to service on the Invech Entities. (Mot. 10-13.)

6    Whether an individual is an alter ego of a corporation or other entity is determined by a

7    multi-factor test aimed at determining whether there is a unity of interest and ownership.

8    *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811 (2010). The factors considered include

9    "one individual's ownership of all stock in a corporation; use of the same office or

10   business location; commingling of funds and other assets of the individual and the

11   corporation; an individual holding out that he is personally liable for debts of the

12   corporation; identical directors and officers; failure to maintain minutes or adequate

13   corporate records; disregard of corporate formalities; absence of corporate assets and

14   inadequate capitalization; and the use of a corporation as a mere shell, instrumentality

15   or conduit for the business of an individual...." *Id.*

16       The Invech Entities share a trade name, hold themselves out as the same entity,

17   and sell substantially the same products. (SAC ¶ 10.) Hu is a corporate officer of Invech

18   Colorado and Invech VS, who maintain trivial capital in known bank accounts despite

19   reaping significant profits. (*Id.* ¶ 278.) Hu transfers such assets between companies and

20   his purported counsel stated he would shift assets to unknown entities if Plaintiff sought

21   entry of default judgment. (*Id.* ¶ 279; Papazian Decl. I ¶ 9.) Plaintiff details an extensive

22   background of bad faith on behalf of Hu and the Invech Entities, including falsification

23   of corporate documents and an intentional default. (Papazian Decl. I ¶¶ 9-10, 12; CO

24   Sec. of State Report, ECF No. 18-1; Aff. of Due Diligence, ECF No. 18-3.) Plaintiff

25   alleges that permitting Hu and the Invech Entities to "use one another as conduits for

26   each other's business, undercapitalize entities with direct liability, and commingle

27   assets but then assert corporate separateness for purposes of avoiding liability" would

28   be inequitable. (SAC ¶ 294.)

Considering the Defaulting Defendants' failure to participate in this litigation, these allegations and evidence support that the Invech Entities and Hu are alter egos. Service on Hu thus operated as service on Invech Amazon. *Vizio, Inc. V. LeEco V. LTD.,* No. SA CV 17-1175-DOC (JPRx), 2018 WL 5303078, at *21 (C.D. Cal. July 27, 2018). Accordingly, each of the Defaulting Defendants was served and the Court may exercise jurisdiction over them.

### B. Procedural Requirements

The procedural requirements of Local Rule 55-1 are met. (Papazian Decl. II ¶¶ 11-14.) The clerk entered default against the Defaulting Defendants. (ECF Nos. 28, 113.) The Defaulting Defendants are not infants, incompetent, persons in military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940. (Papazian Decl. II ¶¶ 11-13.) Although notice is not required by Rule 55(b)(2), as the Defaulting Defendants have not appeared, the Defaulting Defendants have been served with notice of the default. (*Id.* ¶ 14.); *see* Fed. R. Civ. P. 55(b)(2); *see also* Local Civil Rule 55-1(e).

### C. *Eitel* Factors

The *Eitel* factors favor entering default against Hu and the Invech Entities on all seven counts of Plaintiff's copyright infringement claim.

### 1. Possibility of Prejudice to Plaintiff

The first *Eitel* factor examines whether the plaintiff will be prejudiced if default judgment is not granted. *Eitel,* 782 F.2d at 1472. A plaintiff suffers prejudice if there is no recourse for recovery absent default. *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003).

Plaintiff alleges she has suffered significant harm to her business due to the infringement. The Defaulting Defendants have failed to appear and defend themselves in this action. Given their unwillingness to appear, Plaintiff will be without recourse against the Defaulting Defendants if the Court does not intervene. Plaintiff also cites evidence suggesting Hu has already taken steps to evade enforcement of a judgment.

(*See, e.g.,* Articles of Dissolution, ECF No. 117-5.) Hence, there is little doubt that Plaintiff will suffer prejudice if the Court does not enter default judgment against Hu and the Invech Entities.

### 2.  Merits of Plaintiff's Claims and Sufficiency of Complaint

The second and third *Eitel* factors require that the plaintiff "state a claim on which the [plaintiff] may recover." *Castworld,* 219 F.R.D. at 499 (quoting *PepsiCo, Inc. v. Cal. Sec. Cans,* 238 F.Supp.2d 1172, 1175 (C.D. Cal. 2002)). Plaintiff seeks default judgment on all seven counts of her copyright infringement claim. (*See generally* Mot.)

"To prove copyright infringement, a plaintiff must demonstrate (1) ownership of the allegedly infringed work and (2) copying of the protected elements of the work by the defendant." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 984 (9th Cir. 2017) (quoting *Pasillas v. McDonald's Corp.*, 927 F.2d 440, 442 (9th Cir. 1991)). The SAC alleges that Plaintiff is the true and rightful owner of seven copyrights and attaches certificates of registration for each. (*See* SAC ¶¶ 56-63, 85, 103, 121, 139, 157, 178, 198; *see also* Certs. of Registration, ECF Nos. 100-1, 1002.) The SAC includes illustrations and allegations demonstrating that Hu and the Invech Entities infringed all seven copyrights through unauthorized copying of Plaintiff's pictorial and sculptural works. (*See* SAC ¶¶ 70, 76, 89, 107, 125, 143, 162-63, 183, 203-04.) Because the SAC properly alleges the elements for copyright infringement and supporting facts as to each element for all seven copyrights, Plaintiff has stated a copyright infringement claim.

With respect to her vicarious copyright infringement claim, Plaintiff's allegations establish that Hu maintained "(1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017) (internal quotation marks omitted). The SAC alleges that Hu and Liu, corporate officers for Invech VS and Invech CO (SAC ¶¶ 33-34) "engaged in, supervised, had the ability to supervise, and have a financial interest in the violation of Plaintiff's exclusive rights" in all seven copyrights. (SAC ¶¶ 101, 119, 137, 155, 176, 196, 217.) Coupled with additional facts discussed

above concerning Hu's control and pecuniary interests, Plaintiff has sufficiently alleged that Hu is vicariously liable for the Invech Entities' infringement.[3]

But Plaintiff's SAC is devoid of any facts concerning the nature or extent of Liu's control over, or interest in, the Invech Entities' infringement. The SAC alleges that Liu is the secretary of Invech CO and Invech VS and offers upon Plaintiff's information and belief that she "supervised, controlled, and directed the wrongful activities herein." (SAC ¶ 34.) The remainder of the SAC avers similarly unsupported legal conclusions as to Liu, periodically leveling the same accusations at Hu and Liu without explaining how Liu contributed to Hu's evasive tactics or any infringement. Plaintiff's Motion and exhibits suffer from the same deficiency, leaving the Court to guess the grounds for Liu's liability aside from her role as secretary.

The second and third factors therefore favor entry of default against Hu and the Invech Entities only.

### 3. Sum of Money at Stake

The Court must balance "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 998, 1012 (C.D. Cal. 2014) (citation omitted). Where a plaintiff has "pled that the defendants engaged in continuing willful infringement of its copyrights... the district court's default judgment includes an implied finding of willfulness." *Aries Music Entm't, Inc. v. Angelica's Record Distributors, Inc.*, 506 Fed. Appx. 550, 552 (9th Cir. 2013). Plaintiff has properly pled a claim for willful copyright infringement and therefore may seek the maximum statutory damages of $150,000 per work. 17 U.S.C. § 504(c)(2).

Plaintiff seeks $1,050,000 in copyright statutory damages, $214,012.50 in fees, and $17,595.20 in costs for a total of $1,281,607.70. (Mot. 17.) While this is a hefty

---

[3] As discussed, Hu is also liable under Plaintiff's alter ego theory.

sum, Plaintiff alleges a level of deception and willful conduct on behalf of Hu and the Invech Entities that warrants a significant recovery to compensate Plaintiff and dissuade future misconduct. (*See, e.g.,* SAC ¶¶ 2-3, 70-77)  (alleging wanton infringement of copyrighted images resulting in Plaintiff's lower revenues and the Invech Entities' rising profits). Moreover, the Court does not award Plaintiff all her requested relief as shown below. Hence, the significant sums at stake are reasonable in light of Plaintiff's allegations.

### 4. Possibility of Dispute

The fifth *Eitel* factor examines whether there is likelihood of a dispute of material facts. *Eitel,* 782 F.2d at 1472. When deciding whether to grant default judgment, the court accepts all well-pleaded facts as true. *Televideo,* 826 F.2d at 917–18. As such, when a plaintiff pleads the facts necessary to prevail on his or her claims, there is little possibility of dispute over material facts. *Castworld,* 219 F.R.D. at 498.

As discussed, Plaintiff has adequately alleged copyright infringement and the Defaulting Defendants have failed to appear, thereby admitting the SAC's material allegations. Plaintiff has substantiated her claims against Hu and the Invech Entities with considerable evidence, including illustrations and allegations demonstrating that they willfully copied Plaintiff's images without consent and for profit. (SAC ¶¶ 70, 76, 89, 107, 125, 143, 162-63, 183, 203-04.) Hence, no factual disputes preclude entry of default judgment as to Hu and the Invech Entities.

### 5. Possibility of Excusable Neglect

The sixth *Eitel* factor considers whether the defendant's actions may be due to excusable neglect. *Eitel,* 782 F.2d at 1472. There is little possibility of excusable neglect when the defendant is properly served and aware of the litigation. *Wecosign, Inc., v. IFG Holdings, Inc.,* 845 F.Supp.2d 1072, 1082 (C.D. Cal. 2012). As the Defaulting Defendants have received sufficient notice concerning this litigation and the grounds for default judgment, there is virtually no possibility of excusable neglect. *Shanghai Automation Instrument Co., Ltd. v. Kuei,* 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001)

1  (no excusable neglect because defendants "were properly served with the Complaint,

2  the notice of entry of default, as well as the papers in support of the instant motion").

3  ### 6. Policy Favoring Decisions on the Merits

4  "Cases should be decided upon their merits whenever reasonably possible." *Eitel*,

5  782 F.2d at 1472. The enactment of Rule 55(b) indicates, however, that "this preference,

6  standing alone, is not dispositive." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *id.*

7  ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits

8  impractical, if not impossible"). Because the Defaulting Defendants failed to respond

9  to Plaintiff's complaints or offer any defense, the policy of favoring decisions on the

10  merits does not preclude default judgment. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177.

11  Considering the foregoing, the Court finds that all the *Eitel* factors weigh in favor

12  of default judgment against Hu and the Invech Entities, but not against Liu. Plaintiff's

13  Motion for entry of default judgment against Hu and the Invech Entities is **GRANTED**.

14  Plaintiff's Motion for entry of default judgment against Liu is **DENIED**.

15  ### D. Remedy

16  Plaintiff seeks an injunction and $1,050,000 in copyright statutory damages,

17  $214,012.50 in fees, and $17,595.20 in costs for a total of $1,281,607.70. (Mot. 17.)

18  ### 1. Statutory Damages

19  If electing to receive statutory damages, the copyright owner may recover, with

20  respect to any one copyrighted work, "a sum of not less than $750 or more than $30,000

21  as the court considers just." 17 U.S.C. § 504(c)(1). If the infringement was committed

22  willfully, the court may increase the award of statutory damages to a sum of not more

23  than $150,000. *Id.* § 504(c)(2). Plaintiff alleges willful infringement and seeks the

24  maximum statutory award of $150,000 for each of her seven copyrights. (Mot. 19.)

25  ### a. Number of Works

26  The Court first determines whether each copyright constitutes a separate work

27  under section 504(c)(2). *Columbia Pictures Television, Inc. v. Krypton Broadcasting of*

28  *Birmingham, Inc.*, 259 F.3d 1186, 1193 (9th Cir. 2001) ("[S]eparate copyrights are not

distinct works [for damages purposes] unless they can 'live their own copyright life.'") (citations omitted). To determine if multiple copyrights are separate works for damages purposes, the Ninth Circuit asks whether each work has "independent economic value." *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 747 (9th Cir. 2019) ("In the Ninth Circuit, the question of whether something—like a photo, television episode, or so forth—has 'independent economic value' informs our analysis of whether the photo or episode is a work…") (citations omitted).

The Blum Declaration and evidence submitted with the Motion demonstrate that all seven copyrights maintain independent economic value. The copyrighted sculptural works were sold separately at different prices and customers often buy only one style of lamp, sometimes in large quantities. (Blum Decl. ¶¶ 17-18). The four pictorial works maintain independent economic value for similar reasons. *Playboy Enterprises Inc. v. Sanfilippo*, No. 97–0670, 1998 WL 207856, at *5 (S.D. Cal. Mar. 25, 1998) (finding that image in a single publication were separate works because they had "independent economic value" and represented varied licensing agreements, models, photographers, and locations). Namely, they are marketing materials for separate products, *i.e.* different lamps; depicted separately online and in major publications; and used separately by the Invech Entities to market their infringing products. (Blum Decl. ¶¶ 20-22).

The Court thus finds that Plaintiff may recover for seven infringed works.

### b.  Amount of Statutory Award

"The court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984). "In measuring the damages, the court is to be guided by 'what is just in the particular case, considering the nature of the copyright, the circumstances of the infringement and the like ....'" *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (citations omitted). But a "plaintiff may elect statutory damages 'regardless of the adequacy of the evidence offered as to his actual damages or the amount of the defendant's profits.'" *Columbia*

*Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th
Cir. 2001) (citations omitted).

Accepting all alleged facts as true, it is clear that Hu and the Invech Entities
willfully infringed Plaintiff's seven copyrights. *A&M Records, Inc. v. Abdallah*, 948 F.
Supp. 1449, 1457 (C.D. Cal. 1996) ("For purposes of § 504(c)(2), a defendant acts
willfully if he or she knew, had reason to know, or recklessly disregarded the fact that
his or her conduct constituted copyright infringement.") (citations omitted). Plaintiff
alleges the infringement was willful, provides declarations bolstering that allegation,
and supplies graphic evidence that Hu and the Invech Entities intentionally copied
Plaintiff's copyrights. (SAC ¶¶ 2, 85, 92, 103, 110, 121, 128, 139, 146, 168, 188, 209,
226, 229, 245, 248, 256-57, 260, 268, 271.) This is sufficient to find willfulness. *Sanrio,
Inc. v. Torres*, No. CV 14-03736 MMM (JCx), 2015 WL 12661916, at *8 (C.D. Cal.
Jan. 5, 2015) ("The Ninth Circuit has held that, for the purpose of default judgment,
mere allegations of willfulness are sufficient to support a claim of willful
infringement.") (citation omitted). But despite willfulness, Plaintiff's requested
$150,000 per infringement is excessive. *Star Fabrics, Inc. v. Wet Seal, Inc.*, No. CV 14-
07163 BRO (SHx), 2015 WL 12746712, at *7 (C.D. Cal. Apr. 27, 2015) ("Given that
§ 504(c)(2) permits an award of up to $150,000 for one act of willful infringement, and
given that RWS's conduct is consistent with a finding of willfulness, the Court finds
Plaintiff's request for $40,000 to be reasonable under the circumstances."); *Warner
Bros. Home Entertainment Inc. v. Jimenez,* 2013 WL 3397672, at *5 (C.D. Cal. 2013)
(holding plaintiff would receive a windfall if it received $25,000 for each of the 22
copyright infringements against Amazon third-party seller reproducing and selling
copies of copyrighted movies); *Disney Enters., Inc. v. San Jose Party Rental,* 2010 WL
3894190, at *2 (N.D. Cal. 2010) (finding willful infringement but stating that "$25,000
per infringement is nonetheless at the high end of the § 504(c)(1) scale ...").

Plaintiff cites only one copyright case from the Ninth Circuit that awarded full
statutory damages. (Mot. 21) (citing *Starbucks Corp. v. Glass*, No. 2:16-CV-03937-

ODW(PJW), 2016 WL 6126255, at *8 (C.D. Cal. Oct. 20, 2016)). There, Starbucks alleged willful infringement of two copyrights and sought the statutory maximum of $300,000 based largely on the preeminence of its mark, inability to ascertain exact damages, and the defendant's evasive conduct. *Starbucks*, 2016 WL 6126255, at *8. Here, in contrast, Plaintiff does not own a preeminent mark like Starbucks and seeks the maximum statutory damages for seven copyrights rather than two. This Court can find no analogous Ninth Circuit copyright case awarding such exorbitant amounts in similar circumstances and Plaintiff provides none.

Plaintiff's scant quantitative evidence of actual damages does support a significant recovery, albeit far less than $1,050,000. *Microsoft Corporation v. Ricketts*, No. C 06-06712 WHA 2007 WL 1520965, at *4 (N.D. Cal. May 24, 2007) ("In calculating statutory damages, some courts have looked to estimates of actual damages."). For instance, Plaintiff points to a conference before Magistrate Judge Shashi H. Kewalramani during which Walmart's counsel stated that the Invech Entities' sales on Walmart's website is "maybe close to $150,000 of" the accused products. (*See* Oct. 11, 2019 Conf. 34:6-11, ECF No. 49-12.) According to Plaintiff, Walmart was one of many platforms used to sell large quantities of infringing products. (Mot. 21) (citing SAC ¶ 75.) In support, Plaintiff created spreadsheets detailing alleged sales data of infringing products on eBay and Walmart. (eBay Data, ECF No. 49-5; Walmart Data, ECF No. 58.)

But this evidence, and other quantitative evidence presented by Plaintiff, is speculative and does not warrant full statutory damages. *Warner Bros. Home Entm't v. Slaughter*, No. CV 13-0892-DOC RNB(x), 2013 WL 5890682, at *4 (C.D. Cal. Oct. 30, 2013) (noting lack of evidence to "establish a baseline measure of actual damages to assist the Court in determining statutory damages" and awarding $3,000 per infringement for a total of $24,000 in statutory damages). The Court recognizes that Plaintiff's inability to prove all its past and future damages can be attributed to Hu's unscrupulous shell game, which appears designed to reap illicit profits and circumvent

legal recourse. The Court further acknowledges that the infringement and subsequent evasion alleged in the SAC is the type of conduct that statutory damages are intended to prevent. *Los Angeles News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998) ("Because awards of statutory damages serve both compensatory and punitive purposes, a plaintiff may recover statutory damages whether or not there is adequate evidence of the actual damages suffered by plaintiff or of the profits reaped by defendant, in order to sanction and vindicate the statutory policy of discouraging infringement.") (internal quotation marks and citations omitted). The Court is therefore inclined to award Plaintiff more per infringement than is typical in the Ninth Circuit.

In its "wide discretion..., constrained only by the specified maxima and minima," the Court awards Plaintiff $25,000 per infringement in statutory damages, for a total of $175,000. *Harris*, 734 F.2d at 1335.

### 2. Injunctive Relief

Courts may grant injunctive relief "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). To obtain a permanent injunction, the party "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Plaintiff seeks to enjoin the Defaulting Defendants "and any of their officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors, and assigns… from further acts of infringement of any and all of [Plaintiff's] copyrighted works." (*See* Proposed J. ¶ 5, ECF No. 117-6.) Plaintiff contends that if the Court does not issue this injunction, she will suffer irreparable harm, as Hu and the Invech Entities have ignored warnings to cease their infringement and taken steps to avoid participation

in this ligation. (SAC ¶¶ 94, 112, 130, 148, 169, 189, 210; Mot. 23.) Indeed, as discussed, Hu and the Invech Entities willfully infringed all seven copyrights and the Court has no reason to believe they will cease infringing. Due to their continuing infringement and evasive conduct, monetary damages alone are not adequate. *Elektra Entm't Grp. Inc. v. Crawford*, 226 F.R.D. 388, 394 (C.D. Cal. 2005) (granting injunction in copyright case due, in part, to defendant's failure to respond despite two cease and desist letters and noting that "[f]ailure to grant the injunction would result in Plaintiffs' continued exposure to harm with no method of recourse"); *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) (granting permanent injunction as part of default judgment in copyright infringement action in part because "defendant's lack of participation in this litigation has given the court no assurance that defendant's infringing activity will cease"). Finally, the balance of hardships and the public interest favor an injunction, as the profits reaped by Hu and the Invech Entities were ill-gotten and appropriate injunctive relief is necessary to uphold copyright protections.

The Court therefore finds that injunctive relief is appropriate and **GRANTS** Plaintiff a permanent injunction as set forth below.

### 3. Attorneys' Fees and Costs

Plaintiff requests fees and costs under 17 U.S.C. § 505. (Mot. 24.) When the court grants a motion for default judgment, and a statute provides for reasonable attorneys' fees, fees are generally calculated in accordance with the fee schedule provided by Local Rule 55-3. C.D. Cal. L.R. 55-3. Attorneys may request fees in excess of the schedule, as Plaintiff has done here. C.D. Cal. L.R. 55-3. When a party makes such a request, "the court is obligated to calculate a 'reasonable' fee in the usual manner [using the 'lodestar method'], without using the fee schedule as a starting point." *Vogel v. Harbor Plaza Ctr., LLC*, 893 F.3d 1152 (9th Cir. 2018). The "lodestar" method multiplies the hours reasonably expended by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Courts should exclude hours that are excessive, redundant, or not reasonably expended. *Id.* at 434. It is in the court's discretion to

determine the reasonableness of the fees requested. *Id.* at 433. A court may consider a number of pertinent factors in determining the reasonableness of an attorney's fees award. *Langer v. Butler*, No. 19-cv-0829-DOC (JDEx), 2019 WL 6332167, at *8 (C.D. Cal. Aug. 27, 2019) (citing *Quesada v. Thomason*, 850 F.2d 537, 539 n.1 (9th Cir. 1988) (listing twelve factors)).[4]

The rates charged by Plaintiff's counsel and their staff are reasonable in light of their considerable intellectual property experience and comparable market rates. (*See* Papazian Decl. II ¶¶ 17-23; *see also Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) ("We have held that '[i]n determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation.'") (citation omitted)). A review of Plaintiff's invoices coupled with declarations attesting to the necessity of the work does not reveal wasteful billing or duplicitous efforts. (Papazian Decl. II ¶¶ 24-31, Ex. I.) This is especially true here, where counsel's hours were made necessary by Hu's efforts to avoid judgment and continue infringing. *Blizzard Entm't, Inc. v. Reeves*, No. CV 09-7621 SVW AJW(x), 2010 WL 11508371, at *7 (C.D. Cal. July 22, 2010) ("Courts are more likely to grant attorneys' fees when the infringement is willful.") (citations omitted). Counsel's voluntary billing reductions further support that Plaintiff's documented fees are in keeping with the zealous advocacy and satisfactory result Plaintiff has received. *Bravo v. City of Santa Maria*, 810 F.3d 659, 666 (9th Cir. 2016) ("[T]he most critical factor in determining the reasonableness of a fee award" is

---

[4] The factors are: (1) The time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney as a result of accepting the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the result obtained; (9) the experience, reputation, and ability of the attorney(s); (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Id.* at 539 n.1.

"the degree of success obtained.") The Court therefore identifies no well-documented fee or cost that should be discounted.

However, Plaintiff provides no invoices or other evidence to substantiate its fees or costs from July through September 2020. (*See* Invoices, ECF No. 117-13.) Plaintiff's counsel also provides an unsubstantiated estimate for $18,350 in fees for enforcing the judgment and states he will submit a supplemental declaration "with additional invoices related to any reply brief and attendance at any hearing, among other issues." (Papazian Decl. II ¶ 32.) Plaintiff has submitted no additional invoices and the Court declines to compensate undocumented or speculative fee requests. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305 (9th Cir. 1994) (party seeking fees "bears the burden of submitting detailed time records justifying the hours claimed to have been expended.") (citations omitted). The Court subtracts Plaintiff's undocumented fees and costs and awards Plaintiff $180,162.50 in fees and $15,745.20 in costs under 17 U.S.C. § 505.  (Papazian Decl. II ¶ 30, Ex. I.)

Plaintiff is thus awarded $195,907.70 in attorneys' fees and costs.

**V. CONCLUSION**

The Motion is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's Motion for entry of default judgment against Hu and the Invech Entities is **GRANTED**. Plaintiff's Motion for entry of default judgment against Liu is **DENIED**.

The Invech Entities and their officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors, and assigns are enjoined from acts of infringement of Roxana Towry Russell's copyrighted works.

Plaintiff is awarded $370,907.70.

**IT IS SO ORDERED.**

Dated: October 26, 2020

_____

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

21